UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-060129-CR-GOLDBERG

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

THOMAS RAFFANELLO,

    Defendant.

_____/

**DEFENDANT THOMAS RAFFANELLO'S *INITIAL* RULE 29 MOTION
FOR JUDGMENT OF ACQUITTAL AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Rule 29, Federal Rules of Criminal Procedure, the Defendant Thomas Raffanello ("Raffanello") moves this Court: (1) to enter an order granting a Rule 29 Motion For Judgment of Acquittal; and thereafter, (2) dismissing any and all counts charged against Raffanello in the Second Superseding Indictment. As grounds therefor, Raffanello states as follows:

(1)    Each and every count[1] lodged in the Second Superseding Indictment requires proof beyond a reasonable doubt of each of the following[2]:

---

[1] In summary, Count One charges that Defendants knowingly and willfully conspired together to:

(a) corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, the due and proper administration of the law under which a pending proceeding was being had before the Securities and Exchange Commission, an agency of the United States, that is, the SEC investigation alleged in the Second Superseding Indictment, in violation of Title 18, United States Code, Section 1505;

(b) knowingly alter, destroy, and mutilate records, documents, and tangible objects with the intent to impede, obstruct, and influence the investigation and proper administration of the

*(Footnote continued on next page)*

    (a)    that Raffanello knowingly destroyed, altered or withheld documents which he was required to preserve;

    (b)    that he did so with the corrupt intent to impede both the SEC proceeding and federal lawsuit outlined in the Second Superseding Indictment;

    (c)    that the documents were "relevant" or "related to" either: (i) the SEC proceeding; or, (ii) court proceedings, both of which are outlined in the Second Superseding Indictment;

    (d)    that Raffanello, knew that the natural and probable effect of the destruction, alteration or withholding of such documents would be to impede or otherwise interfere with either the SEC proceeding or the court proceeding outlined in the Second Superseding Indictment and/or,

---

*(Footnote continued from previous page)*

SEC proceeding alleged in the Second Superseding Indictment, in violation of Title 18, United States Code, Section 1519; and

    (c) corruptly alter, destroy, mutilate, and conceal a record, document, and other object, with the intent to impair the object's integrity and availability for use in an official proceeding, and to otherwise obstruct, influence, and impede an official proceeding, that is, the court proceedings in *SEC v. Stanford International Bank, Ltd.*, et al., Case No. 3-09CV0298-L in the Northern District of Texas as alleged in the Second Superseding Indictment, in violation of Title 18, United States Code, Section 1512(c).

    Likewise, Counts Two, Three and Four respectively, charge that Defendants obstructed a proceeding before the SEC, to wit: an SEC investigation of Stanford International Bank, Ltd. as described in the Second Superseding Indictment (Count Two); Defendants destroyed records in a federal investigation, to wit: an SEC investigation of Stanford International Bank, Ltd. (Count Three); and, they destroyed documents in an official court proceeding, to wit: court proceedings in *SEC v. Stanford International Bank, Ltd., et al.*, Case No. 3-09CV0298-L in the Northern District of Texas (Count Four).

    [2] Additional elements will be addressed in a subsequent memorandum, if necessary.

  (e)  that Raffanello and others willfully conspired to destroy such documents, with an intent to violate the law.

(2) The Government proved <u>none</u> of the above-referenced elements in their case-in-chief. Instead, <u>evidence presented by the Government proved</u> nothing more than the fact that, in this particular case, <u>there simply was no crime.</u>

(3) First, the Government failed to introduce <u>any</u> evidence that Raffanello <u>failed to preserve any</u> document.

  (a)  Specifically, the Government failed to provide proof that <u>any</u> shredded document was not otherwise preserved as an electronic record.

  (b)  Instead, Government witness Emily Ocheltree admitted that <u>all</u> Stanford Financial Group Company documents <u>were preserved on the computer and backed up by the server</u>. (T. 2/4/10 at 6, 29, 50-52).

  (c)  So did FBI Agent Fransen. He too, admitted that Raffanello said (during the interview by Agent Fransen) that every single document was on the computer backed up by the server. (T. 2/4/10 at 77-78, 81, 90, 105, 112-116); and,

  (d)  Not one of the bags of alleged Stanford Financial Group Company documents <u>were ever introduced as evidence in the case at bar. So none can be considered as evidence in this case</u>. (T. 2/2/10 at 92 et seq.).

(4) Evidence that all documents were preserved in electronic form does <u>not</u> prove criminal conduct as alleged in the Second Superseding Indictment. Neither does the fact that not one Government witness testified that they reviewed shredded documents. Nor does the fact that not one Government witness testified that <u>any</u> records were missing. Instead, Government witness Schulte (Receiver's legal representative) admitted: (a) he had never

3

represented a Receiver before; (b) he did not review shredded documents; (c) did not review documents on the server; (d) did not review the thirteen boxes of documents (hard copies) retrieved from Raffanello;[3] but now, (e) wishes that he had. (T. 2/5/10 at 4-5, 32-33, 55-58, 74).

(5) Such evidence is not indicative of guilt. Rather it illustrates unequivocally that Raffanello complied with federal law regarding the preservation of documents. *See* Title 15, United States Code, Section 7001, which provides in pertinent part that if a statute, regulation, or other rule of law[4], requires a company or individual to retain records relating to any transaction or contract affecting interstate or foreign commerce, that the retention requirement is met by retaining or keeping an electronic record of the information that:

(a) Accurately reflects the information set forth in the contract or other record; and,

(b) Remains accessible to all persons who are entitled to access the documents in a form that is capable of being accurately reproduced for later reference. (*Id.*)

---

[3] (*See* T. 2/5/10 at 4):

> Q. Mr. Schulte, you said it is my understanding. Do you have personal knowledge of any of the items in those boxes?
>
> A. No.

(*Id.*).

[4] Black's Law Dictionary defines "rule of law" as includes: "Loosely, a **legal ruling; a ruling on a point of law** the *ratio aecidendi* of a case is any rule of law reached by the judge as a necessary step in the decision." BLACK'S LAW DICTIONARY 1359 (8th ed. 2007) (emphasis added).

4

(6) Even if a statute, regulation or other rule of law requires a record to be retained in its <u>original</u> form, that requirement is satisfied by the retention of an electronic record[5] in accordance with Title 15, United States Code, Section 7001. Raffanello complied with Title 15, United States Code, Section 7001. And, the Government offered no evidence to the contrary. Specifically, the Government failed: (a) to introduce shredded documents; or (b) to prove that <u>any</u> evidence was missing as a result of the shred. Instead, the Government attempted to infer (through the testimony of Emily Ocheltree) that the foreign contact list was shredded. (T. 2/4/10 at 62). However, cross-examination of Government witness Schulte showed the inference was inaccurate. Government Exhibit 206(B), which was pulled from the files the Receiver gathered from Raffanello's office, contained a binder that included the foreign contact list, an employee list with contact numbers and a vendor list. (2/5/10 at 56-58, 72-74). So the document: (a) had not been shredded; (b) was provided to the Receiver by Raffanello; but, (c) Schulte never bothered to look. (T. 2/5/10 at 55-56, 72-74).

(7) The Government also failed to prove that <u>any</u> of the "shredded documents" were <u>relevant</u> <u>or</u> <u>related</u> to either the SEC proceeding or court proceeding outlined in the Second Superseding Indictment. One Government witness, Gina Menicucci of Florida Shredding", said she did not know what documents were shredded because she was "not there." (T. 2/2/10 at 47.) Another Government witness, the Florida Shredding driver

---

[5] Under the statute, the term "electronic record" means a contract or other record created, generated, sent, communicated, received, or stored by electronic means.

Under the statute, the term "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

who actually shredded the documents admitted he didn't "actually look at (the documents) when they were shredded." (T. 2/2/10 at 65.) The same is true of the Government's third and final witness from Florida Shredding, the owner Manuel Pichardo. Pichardo admitted he never looked at the bags of shredded documents and could not even say for certain that the bags of shredded papers contained documents from Stanford Financial Group Company.

>    Q.   You never looked?
>
>    A.   I never looked.
>
>                    * * *
>
>    Q.   That is what you are assuming?
>
>    A.   Correct.
>
>    Q.   That is speculation?
>
>    A.   Yes.

(T. 2/2/10 at 120).

(8) Even more compelling is the fact that the Receiver's legal representative, David Schulte ("Schulte") admitted that he too, did not know the contents of the shredded bags. Neither did he know the contents of boxes taken from the Ft. Lauderdale office of Stanford Financial Group Company. (T. 2/5/10 at 4). Instead, he admitted that:

(a) Raffanello told him at least three times that the office was "paperless" and everything was on the server. (T. 2/5/10 at 35).

(b) Raffanello also advised Schulte that he (Raffanello) <u>had already provided all such documents to the Receiver's initial representatives, FTI, prior to the shredding of any documents</u>. (T. 2/5/10 at 35).

6

    (c)    Raffanello also advised: "(w)e're a security office, we have nothing to do with the financial transactions of Stanford"; we "have no financial records whatsoever"; and that "(w)e're a paperless office. Everything is on the computers and servers. In fact, your people were out here to mirror the hard drives." (T. 2/5/10 at 801).

(9)    Similarly, Schulte, further admitted:

    (a)    That he never looked on the server to see what documents were on there. (T. 2/5/10 at 58).

    (b)    That he did not open the bags from Florida Shredding. (T. 2/5/10 at 49).

    (c)    That he was unfamiliar with Title 15, United States Code, Section 7001. (T. 2/5/10 at 58).

    (d)    That he never went through the thirteen boxes of documents he collected from Raffanello and the Ft. Lauderdale office of the Stanford Financial Group Company. (T. 2/5/10 at 32-33, 74).

    (e)    He "ha(s) no idea whether anything that is or is not in the those boxes was preserved on the server." (T. 2/5/10 at 80).

    (f)    The Ft. Lauderdale office was <u>not</u> "in the complaint"; <u>not</u> on the "list of offices that [Schulte] had access to"; and <u>not</u> listed on the website. (T. 2/5/10 at 66-67). And,

    (g)    When confronted on cross-examination with the detailed documentation provided by Raffanello, Schulte said he "wished" it had been provided. (T. 2/5/10 at 56). It was. Raffanello left the documents for Schulte. Schulte just failed to review them when he did.

(10)   Raffanello wishes that he had. Raffanello, a 30 year veteran of the DEA was <u>criminally indicted</u> and subjected to public humiliation. He has suffered a loss of reputation and his livelihood. And, he is faced with ever mounting attorneys fees to pay for his defense. He is in this untenable position facing 20 plus years incarceration because the Government <u>chose</u> to indict (on three separate occasions) <u>despite the fact that</u>:

    (a)   The Government provided <u>no</u> evidence that any witness reviewed the computer records provided by Raffanello;

    (b)   The Government provided <u>no</u> evidence that any witnesses viewed the shredded documents;

    (c)   The Government provided <u>no</u> evidence that any witness reviewed the thirteen boxes of documents collected by the Receiver from the Ft. Lauderdale office of the Stanford Financial Group Company; and,

    (d)   No Government witness was aware of Title 15, United States Code, Section 7001.

(11)   Such circumstances are simply incomprehensible. They also illustrate a <u>total</u> lack of legal sufficiency.

(12)   Regardless, the Government attempts to replace its lack of evidence with inference conjecture and speculation. To that end, the Government implied there is indicia of "something untoward" because more paper was shredded on February 25, 2009, than on any other occasion. Such an "inference of impropriety," is improper here. In attempting to argue the viability of such an inference, the Government overlooks the fact that the shred was delayed two weeks, so more garbage would have naturally accumulated. It also overlooks the fact that employees had been advised that the office was being closed. When one moves or closes an office, one generally has more refuse to discard.

      Moreover, the rescheduling of the shred to February 25th <u>was done by Florida Shredding, not by the Defendants</u>.

(13) In similar fashion, the Government overlooks the fact that <u>prior to any shredding at all</u>, the Receiver's <u>forensic computer representative FTI, had been given complete access to everything at the Ft. Lauderdale office of Stanford Financial Group Company and had copied electronic records, before they left the office</u>. Under such circumstances there simply <u>is no reasonable</u> inference upon which a finding of guilt can be based.

(14) Neither assumption nor speculation is sufficient to establish: (a) what the shredded documents actually were; (b) whether any were missing; (c) whether they were related to either the SEC proceeding or federal case outlined in the Second Superseding Indictment; and (d) whether Raffanello knew the shredding of such documents would have a natural and probable effect of interfering with either of the "proceedings" referenced in the Second Superseding Indictment.[6]  *See* Paragraph 16, *infra.*

(15) The same is true of evidence regarding the alleged confrontation between Schulte and Raffanello when the two first met. Schulte's testimony showed only an understandable encounter between an inexperienced lawyer for the Receiver who, without warning, broke into an office and destroyed an alarm system, and who came equipped <u>only</u> with a Texas Bar card and a business card for a law firm that was <u>not even mentioned in the Texas court order which appointed a receiver</u>. So Schulte testified (as would be

---

[6] *See United States v. Ares*, 98-943-CR-GOLD (order granting defendants' motion for judgment of acquittal), *aff'd* by Eleventh Circuit at 34 Fed. Appx. 388 (11th Cir. 2002) (which held that a conviction cannot be based upon either: (1) the piling of inference upon inference, or (2) an ambiguous or innocent inference)); *United States v. Pigman*, 546 F.2d 609 (5th Cir. 1997) (accord).

expected) that Raffanello and others were angry, and that they were in the office with Schulte for <u>only</u> a relatively short period of time. (Less than an hour "more or less".) He also admitted that while there, Raffanello answered most questions and did not attempt to interfere with Schulte's retrieval of records. (T. 2/5/10 at 28-31).

> A.  . . . Mr. Raffanello was talking about how I had humiliated him by coming in as I did. Mr. Belovich went on and on about how he was going to sue me. How unprofessional it was. Mr. Belovich was a lawyer and he knew what lawyers were supposed to do and I had not done what a lawyer was supposed to do.
>
> * * *
>
> A.  They were both very angry.

(*Id.* at 28).

> * * *
>
> Q.  There was no issue of <u>we're taking this when</u> (sic) [whether] <u>you say so or not. There was no confrontation about that, right</u>?
>
> A.  That's correct.

(*Id.* at 31) (emphasis added). Based upon such testimony the Government's evidence of "interference" with Schulte is likewise, legally insufficient.

(16)  As a result, the Government's lack of evidence gives rise to a "fair doubt as to whether the defendants' conduct (at issue) is embraced within the prohibition, (thus) the policy of lenity requires that the doubt be resolved in favor of the accused." *United States v. Brand*, 775 F.2d 1460, 1465 (11th Cir. 1985); *United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979) (accord). *United States v. Guzzino*, 810 F.2d 687, 696-97 (7th Cir. 1987) (a verdict must <u>not</u> rest "solely on the piling of inference upon inference"; courts must guard against the possibility of affirming a conviction based upon "innocent or ambiguous

10

inference"); *United States v. Thomas*, 916 F.2d 647, 653 (11th Cir. 1990) ("if a reasonable jury must necessarily entertain reasonable doubt" conviction must be reversed). *See also United States v. Chandler*, 388 F.3d 796, 805 (11th Cir. 2004) ("If there is doubt whether the defendants' conduct is criminal, the rule of lenity requires that the doubt be resolved in favor of the accused.").

(17) Such are the circumstances here. The Government failed to introduce the shredded documents. The Government failed to establish that any documents were missing. The Government failed to establish that documents were <u>not</u> preserved in accordance with federal law. The Government failed to establish that documents were relevant or related to the SEC and court proceeding detailed in the Second Superseding Indictment. And, the Government failed to establish that Raffanello knew that the natural and probable effect of his preservation of documents in electronic form would impede either proceeding.

(18) Finally, the Government failed to provide <u>one scintilla</u> of evidence regarding the required "corrupt intent". Instead, all Government witnesses indicated that the inverse was true in this particular case.

    (a) Government witness Emily Ocheltree ("Ocheltree") testified that neither Raffanello, Bruce Perraud, nor any other person, met, discussed, agreed, or in <u>any</u> way indicated a desire or intent to destroy <u>any</u> document, or otherwise impede or interfere with either the SEC proceeding or the court proceeding outlined in the Second Superseding Indictment.

        Q.    Beyond making records, the Fort Lauderdale office and the six people you worked with in that office simply had no professional involvement in the investment or banking

11

programs of the Stanford Financial Group companies, correct?

A. Correct, we did not.

Q. When you went to do the shred, participate in the shred, based on the meeting of February 23rd that you described, on February 25th it was not Emily Ocheltree's intention to impede or obstruct the receiver in any way, was it?

A. No, of course not.

Q. It was not Emily Ocheltree's intention to obstruct or impede an SEC investigation, correct?

A. No.

Q. You wouldn't do that, would you?

A. I would not, no.

* * *

Q. And planning the shred on the 25th, you never heard a single solitary soul say one thing about impeding an investigation or hiding anything from the receiver, did you?

A. No, I did not.

Q. You never heard Tom Raffanello say to anyone in that office with Mr. Perraud present or not present, at any time that you were there, we have to prevent the SEC from investigating Mr. Stanford and his companies? Nothing like that, correct?

A. No, I did not hear him say that.

Q. You never heard Mr. Perraud make any statement like that, did you?

A. No, I did not.

Q. Did you not ever hear Anthony Belovich make any statement like that?

A. No, I did not.

12

> Q. From the time you got back from Mexico on February 20th up to the time and through the time of the shred, did you see Bruce Perraud and Tom Raffanello go off to the side and have candescent [sic] meetings where they were trying to have you or other people excluded from conversations?
>
> A. No.
>
> \* \* \*
>
> Q. You were told, in essence, to shred <u>unnecessary</u> paper in the office, correct?
>
> A. Yes.
>
> \* \* \*
>
> Q. And the policy of the office was that all of the work product of the office was to be saved and preserved in that server, correct?
>
> A. Yes.
>
> Q. That is the intention under which everyone operated within that office, correct?
>
> A. Yes.

(T. 2/3/10 at 152-57).

    (b)    Testimony for FBI Agent Fransen is in complete accord.

> A. … I asked him specifically a directed question of why he as a law enforcement executive - - why would he violent (sic) a Court order from a Judge.
>
> His first statement was that he felt the shredded stuff was garbage. He said that - - I believe the second portion he said is that everything was backed up to a server and - - in Miami and in Houston.

(T. 2/4/10 at 90).

\* \* \*

13

> Q. Then what he tells you about the shred was, I felt I was doing a favor for the receiver. I was doing the right thing. All the documents were backed up to a server in Houston and Miami. That's what he tells you, correct?
>
> A. At this point in the interview that is what he told me.
>
> Q. That's in your notes, right up front.
>
> A. Yes, at this point in the interview, this is what he told me.

(T. 2/2/10 at 112-113).

> Q. Then you asked him, why would you disobey a Federal Court order?
>
> A. That's correct. I asked him directly why - - I specifically asked him.
>
> Q. What he said was, I did not consider garbage was included in that Court order. Once the document is copied twice, I didn't think the receiver needed it. That's exactly what he tells you. You write that word for word, correct?
>
> A. Yes. I asked Mr. Raffanello why - - I asked him specifically, a law enforcement executive would purposely disobey a Court order and he told me word for word what you just read.

(T. 2/4/10 at 114-115).

(19) Even if Raffanello was inaccurate in his assessment of what the order meant, such evidence is still legally insufficient. *United States v. Reyes-Vasquez*, 905 F.2d 1497, 1503 (11th Cir. 1990) ("It is hornbook law that a 'mistake of fact or law is a defense when it negatives the existence of a mental state essential to the crime charged.'"), citing WAYNE LAFAVE & AUSTIN SCOTT, JR., 1 SUBSTANTIVE CRIMINAL LAW § 5.1, at 575 (1986); *United States v. Ruiz*, 59 F.3d 1151, 1153 n.8, 1155 (11th Cir. 1995) ("defendant whose actions are based on . . . honest belief that she was acting lawfully is not chargeable with willful criminal conduct - even if her belief was erroneous or mistaken";

14

"a series of unlawful acts may be intentionally, willfully, purposefully, and voluntarily committed without *criminal* intent") (emphasis in original); *United States v. Pitt*, 193 F.3d 751, 755 n.1 (3d Cir. 1999) ("Mistake of fact . . . can negate the intent element necessary for a conviction."); *United States v. MacDonald & Watson Waste Oil Co.*, 933 F.2d 35, 55 (1st Cir. 1991) ("In a crime having knowledge as an express element, a mere showing of official responsibility . . . is not an adequate substitute for direct or circumstantial proof of knowledge.").

(20) Evidence outlined above does not provide the requisite "substantial evidence" of corrupt intent to impede either the SEC proceedings or court proceedings outlined in the Second Superseding Indictment. Nor does it provide "substantial evidence" that Raffanello knowingly intended to enter into an agreement to disobey the law. As a result, Government evidence as to each essential element is legally insufficient. *United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998). *See also United States v. Chandler*, 388 F.3d 796, 800 (11th Cir. 2004) ("Under federal conspiracy law, the government must allege and prove that the defendants *knowingly* entered into an agreement to commit an *unlawful* act.") (emphasis in original); *United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1995) ("To support a conviction for conspiracy, the Government must prove that a conspiracy existed, that the defendant had knowledge of the essential aims of the conspiracy, and that with such knowledge, the defendant joined the conspiracy.").

(21) The same is true regarding the lack of "substantial evidence" to prove that "shredded documents" at issue were "relevant" or "related to" either the SEC proceeding or federal lawsuit defined in the Second Superseding Indictment. Both are required to establish guilt. Neither was proven here.

(22)  Neither the driver, the manager nor the owner knew what was contained in the bags of shredded documents. Neither did anyone else. More importantly, no one reconstructed the documents: (a) to determine the relevance; if any, to either the SEC or court proceeding; or, (b) to determine whether any documents were missing from the electronic record. The Governments' failure to do so once again illustrates that evidence of yet another essential element is legally insufficient. So does the fact that the Government failed to even introduce the bags of "shredded documents" as evidence in its case.

Based upon the facts of this case and the law which governs them, Defendant Thomas Raffanello's Rule 29 Motion For Judgment of Acquittal should be granted. All charges must be dismissed. *See United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998) (which held that while evidence is viewed "in the light most favorable to the government," a verdict of guilt cannot stand if: (1) there is not "substantial evidence"; and (2) if no "trier of fact could have found guilt beyond a reasonable doubt.")[7]; *United States v. Guzzino*, 810 F.2d 687, 696-97 (7th Cir. 1987) (a verdict must not rest "solely on the piling of inference upon inference"; courts must guard against the possibility of affirming a conviction based upon "innocent or ambiguous inference"); *United States v. Thomas*, 916 F.2d 647, 653 (11th Cir. 1990) ("A conviction must be reversed . . . if a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt."); *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989) ("If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed.").

---

[7] *See Toler*, 144 F.3d at 1433 ("We cannot conclude that the government's inferential leap suffices to cross the chasm of proof beyond a reasonable doubt that [the defendant] agreed to join the conspiracy.").

16

Respectfully submitted,

*/s/ Janice Burton Sharpstein*

| | |
|---|---|
| Kendall Coffey, Esq. (Fla. Bar No. 259861) | Janice Burton Sharpstein (Fla. Bar No. 205362) |
| E-Mail:  kcoffey@coffeyburlington.com | E-mail:  jbs@jordenusa.com |
| Jeffrey Crockett, Esq. (Fla. Bar No. 347401) | Ari Gerstin (Fla. Bar No. 0839671) |
| E-mail:  jcrockett@coffeyburlington.com | E-mail:  ag@jordenusa.com |
| COFFEY BURLINGTON | Richard A. Sharpstein (Fla. Bar No. 208817) |
| 2699 South Bayshore Drive | E-mail:  ras@jordenusa.com |
| Miami, Florida  33131 | JORDEN BURT LLP |
| Telephone:  (305) 858-2900 | 777 Brickell Avenue, Suite 500 |
| Facsimile:  (305) 858-5261 | Miami, Florida  33131 |
| | Telephone:  (305) 371-2600 |
| | Facsimile:  (305) 372-9928 |

## LOCAL RULE 88.9A STATEMENT

Pursuant to Local Rule 7.1A, which is incorporated by reference to criminal cases by Rule 88.9A, this motion falls within the class of substantive motions which are exempt from the pre-filing conference requirement.

*/s/ Janice Burton Sharpstein*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of February, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Janice Burton Sharpstein*

## SERVICE LIST
### United States of America v. Thomas Raffanello
### Case No. 09-60129-CR- GOLDBERG
### United States District Court, Southern District Of Florida

Matthew Klecka, Senior Litigation Counsel
Jack B. Patrick, Senior Litigation Counsel
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue NW
Washington, DC 20005-2107
[via Notices of Electronic Filing generated
by CM/ECF]

Edward R. Shohat
Bierman, Shohat, Loewy & Kegerreis, P.A.
800 Brickell Avenue
Penthouse Two
Miami, Florida  33131
[via Notice of Electronic Filing generated
by CM/ECF]

184068v2